# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 5, 2004          Decided June 3, 2005

No. 03-5325

WILLIAM E. SHEA,
APPELLANT

v.

CONDOLEEZA RICE,
IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE ONLY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00577)

———

*William E. Shea*, *pro se*, argued the cause for the appellant.

Darrell C. Valdez, Assistant United States Attorney, argued the cause for the appellee. *Kenneth L. Wainstein*, United States Attorney, and *Michael J. Ryan*, Assistant United States Attorney, were on brief. *R. Craig Lawrence* and *Robert E. Leidenheimer, Jr.*, Assistant United States Attorneys, entered appearances.

Before: HENDERSON and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

2

Opinion for the court filed by *Circuit Judge* HENDERSON.

Separate opinion filed by *Senior Circuit Judge* WILLIAMS.

HENDERSON, *Circuit Judge*: William Shea appeals the district court's dismissal of his employment discrimination lawsuit against Colin Powell, the former Secretary of the United States Department of State[1] (State Department), in the same capacity that he litigated it below—*pro se*. While the district court dismissed all of his allegations on the pleadings—finding none stated a viable claim—Shea seeks review of only one: *i.e.*, that his pay and benefits are discriminatorily low because the State Department set his pay grade pursuant to a diversity program that disadvantaged him on account of his race (white) and ethnicity (Irish), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Equal Protection component of the Fifth Amendment, U.S. CONST. amend V. The district court erred in finding the claim time-barred, he maintains, because each paycheck that he received within the statute of limitations period and thereafter constitutes a discrete discriminatory act. We agree and, for the reasons set forth below, reverse the district court and remand for further proceedings.

## I.

For the purpose of Shea's appeal, we assume the truth of the factual allegations contained in his complaint,[2] the salient

---

[1] Shea sued Powell in his official capacity as Secretary of State. *See* 42 U.S.C. § 2000e-16(c). Powell has since resigned and his successor, Condoleezza Rice, is automatically substituted pursuant to FEDERAL RULES OF APPELLATE PROCEDURE Rule 43(c)(2).

[2] Shea's complaint was dismissed pursuant to FEDERAL RULES OF CIVIL PROCEDURE Rule 12(b)(6). *See Gilvin v. Fire*, 259 F.3d 749,

aspects of which we briefly summarize. Shea is a Foreign Service Officer (FSO) employed by the State Department and has been so since May 1992. He is also white and of Irish heritage. In the portion of his complaint he seeks to revive, he alleged that, at the time of his hiring, he was assigned a lower pay grade than similarly-situated minority hires pursuant to a State Department program aimed at achieving diversity in its workforce. As Shea alleged in his complaint:

> [A]t the time I applied for a position as an FSO in 1991 and started in 1992, the Department was giving higher starting paygrades to minorities with the same qualifications I had, and lower starting paygrades to non-minorities. I was not eligible to start at a higher grade only because of my race/ethnicity. I would have started two paygrades higher than I did, but for my non-minority race/ethnicity status. The government interest being advanced by this racially discriminatory program was, again, achieving racial balancing (diversity) in the workforce.

Joint Appendix (J.A.) 15. Shea further alleged that, as a result of this "racially discriminatory program," he "receiv[es] less pay with each paycheck than [he] would . . . if [he] had not been discriminated[] against." *Id.* According to his complaint:

> At an absolute minimum, even in the unlikely event that I had never been promoted, if I had

---

756 (D.C. Cir. 2001) ("In considering the claims dismissed pursuant to Rule 12(b)(6), we must treat the complaint's factual allegations as true, must grant plaintiff the benefit of all reasonable inferences from the facts alleged, and may uphold the dismissal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (internal quotation marks & citations omitted)).

> started in 1992 at FS-3 I would today be receiving pay at no less than the rate of an FS-3 step nine ($68,684 per year) rather than my current FS-3 step 5 ($61,025). If I had started at FS-3 and been promoted at about an average rate, I would now be paid at about the grade of FS-2 [sic] step 4 ($73,119). If promoted at a faster-than-average rate, I would be receiving higher pay than $73,119.

*Id.* Shea alleged that the receipt of each paycheck constitutes a "recurring violation of Title VII." *Id.*

Shea initially filed a grievance with the State Department, as required by statute. *See* 22 U.S.C. § 4134(a). When the State Department failed to act on his discrimination claims within 90 days, Shea filed his grievance with the Foreign Service Grievance Board (Board). *See id.* § 4134(b). The Board dismissed his grievance, finding that it lacked jurisdiction to entertain it. Shea then filed suit in federal district court to obtain review of the Board's decision, as permitted by statute. *See id.* § 4140.

On September 30, 2003, the district court granted the Secretary's Rule 12(b)(6) motion to dismiss Shea's complaint. FED. R. CIV. P. 12(b)(6). As to the pay grade discrimination claim, the district court concluded that "the allegedly discriminatory act—the assignment of a pay grade two levels below that of similarly qualified minority hires—did not occur within the period covered by his administrative complaint." J.A. 8. The district court first observed that, because a grievance under the Foreign Service Act is statutorily time-barred if filed later than 180 days "after the occurrence giving rise to the grievance," 22 U.S.C. § 4134(a) & (c)(1), Shea could not recover on all of the paychecks he received since he was hired in May 1992 but, at most, only on those received after January 12, 2001, or 180 days before he filed his grievance with the

State Department on July 11, 2001. It then concluded that Shea could not recover on paychecks received *after* January 12, 2001 either. Relying on *Neidermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001), the district court explained that Shea "did not allege that a discriminatory system akin to those in *Bazemore* [*v. Friday*, 478 U.S. 385 (1986),] and *Anderson* [*v. Zubieta*, 180 F.3d 329 (D.C. Cir. 1999),] was in place when he filed suit" and thus his "complaint amounted to no more than allegations of discrimination in May 1992, when he started at a lower pay grade." J.A. 8-9.

Shea now appeals.

## II.

Our review is *de novo*. *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). Construing Shea's factual allegations and all reasonable inferences therefrom in his favor, we reverse the district court's dismissal of the one claim Shea appeals because it does not appear "beyond doubt" that he cannot prove a "set of facts in support of his claim which would entitle him to relief." *Id.*

Shea waited until July 11, 2001, to file an administrative grievance with the State Department, alleging that he had received discriminatorily low pay and benefits since he was hired in May 1992. The rub, as the district court recognized, is that the Foreign Service Act "forever" bars any grievance based on alleged discrimination if the grievance is filed more than 180 days "after the occurrence giving rise to the grievance." 22 U.S.C. § 4134(a) & (c)(1). The question, then, is whether Shea can state a claim for relief regarding the allegedly discriminatory paychecks he received both within the limitations period and thereafter or whether, as the district court concluded, his entire claim is time-barred.

The Secretary, relying on the holding in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), insists that Shea's entire

claim is time-barred. In *Morgan*, the Court foreclosed the use of the "continuing violation" doctrine to restore an untimely claim involving a separate act of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 113-14. It held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "Each discrete discriminatory act," the Court explained, "starts a new clock for filing charges alleging that act." *Id. Morgan* dooms any hope Shea entertained that his current (and allegedly discriminatory) paychecks can resurrect his otherwise untimely challenges to the paychecks he received before January 12, 2001—or 180 days before he filed his grievance. Whether it also precludes him from challenging the allegedly discriminatory paychecks received thereafter is not as clear.

The Secretary contends that Shea merely complains about the present effects of a past act—namely, the State Department's assignment of an allegedly discriminatorily low pay grade in 1992—and therefore even the post-January 12, 2001, claim is barred. The district court accepted this argument, concluding that "the allegedly discriminatory act—the assignment of a pay grade two levels below that of similarly qualified minority hires—did not occur within the period covered by his administrative complaint." J.A. 8. If Shea were complaining of the assignment of a discriminatorily low pay grade only, we would agree under a clear line of Supreme Court cases—*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977), *Delaware State College v. Ricks*, 449 U.S. 250 (1980) and *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900 (1989)—that "bars claims where the relevant aspect of the employment system (such as a promotion, seniority, or termination) is facially neutral, and any discrete discriminatory conduct took place and ceased outside the period

of limitations."[3]    *Cardenas v. Massey*, 269 F.3d 251,

---

[3] In *Evans*, the plaintiff was forced to resign in 1968 because a United Air Lines policy barred female flight attendants who were married. *See* 431 U.S. at 554. Following litigation that held United's "no marriage" policy violated Title VII—litigation to which she was not a party—the plaintiff was rehired in 1972. *See id.* at 554-55. When United gave her no seniority based on her earlier service, however, she sued. *See id.* at 555-56. While she conceded that any discrimination claim based on her forced resignation was untimely, she alleged that the seniority system gave present effect to a past discriminatory act and "therefore perpetuate[d] the consequences of forbidden discrimination." *See id.* at 557. The Supreme Court rejected her claim, holding that, notwithstanding the fact that United's seniority system perpetuated a past discriminatory act by discounting her prior service, she had failed to allege any current violation because the seniority system itself was facially neutral and operated in a non-discriminatory manner. *Id.* at 558. "[A] challenge to a neutral system," it explained, "may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer." *Id.* at 560.

In *Ricks*, the plaintiff, a junior professor, alleged that Delaware State College discriminated against him based on his national origin when it denied him tenure and instead gave him a one-year " 'terminal contract.' " *See* 449 U.S. at 253. Relying on the continuing violation doctrine, the plaintiff alleged that the limitations period did not commence with the College's tenure decision but with the expiration of his terminal contract. *Id.* at 557. The Court disagreed, explaining that because "the only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to [the plaintiff]," the "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 557-58. "That is so," said the Court, "even though one of the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later." *Id.* at 258 (emphasis in *Ricks*). "The emphasis is not upon

256 (3d Cir. 2001).

Shea's complaint, however, is not simply that the State Department discriminated against him in assigning him a lower pay grade than similarly-situated minority hires *in 1992* but that, as a consequence of the "racially discriminatory" diversity program it then operated, *he "receiv[es] less pay with each paycheck than [he] would be [receiving] if [he] had not been discriminated[ ] against."* J.A. 15 (emphasis added). We believe this allegation is properly analyzed not under the *Evans-Ricks-Lorance* line of precedent, which treats discriminatory acts under a facially-neutral employment system, but instead under the holding in *Bazemore v. Friday*, 478 U.S. 385 (1986). In *Bazemore*, the Court unanimously declared that the employer

---

the effects of earlier employment decisions; rather it 'is [upon] whether any present *violation* exists.' " *Id.* (quoting *Evans*, 431 U.S. at 558) (alteration in *Ricks*).

Finally, in *Lorance*, the three female plaintiffs alleged that they were demoted under a seniority system that "ha[d] its genesis in [sex] discrimination." 490 U.S. at 905 (internal quotation marks omitted & alterations in *Lorance*). Because the seniority system was adopted outside the limitations period and the plaintiffs alleged neither that it "treat[ed] similarly situated employees differently [n]or that it [was] operated in an intentionally discriminatory manner," the Court, once again refusing to apply the continuing violation doctrine, found their challenge untimely. *Id.* "There is no doubt," the Court explained, "that a facially discriminatory seniority system (one that treats similarly situated employees differently) can be challenged at any time, and that even a facially neutral system, if it is adopted with unlawful discriminatory motive, can be challenged within the prescribed period after adoption." *Id.* at 912. But, the Court held, "[b]ecause the claimed invalidity of the facially nondiscriminatory and neutrally applied tester seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, it is the date of that signing which governs the limitations period." *Id.* at 911.

committed a separate unlawful employment practice each time he paid one employee less than another for a discriminatory reason. *See id.* at 396 (Brennan, J., concurring, joined by all other Members of the Court). "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to" the limitations period. *Id.* at 395-96.

This is not the first time our Circuit has recognized the distinction between the *Evans-Ricks-Lorance* line, on the one hand, and *Bazemore*, on the other. *See Anderson v. Zubieta*, 180 F.3d 329 (D.C. Cir. 1999). In *Anderson*, we said that "*Bazemore* was a case in which [the] plaintiffs contended not just that the pay system was originally adopted for discriminatory reasons, but that it continued to discriminate unlawfully each time it was applied," concluding that the *Anderson* plaintiffs landed on the *Bazemore* "side of the line." *Id.* at 336. In *Anderson*, the plaintiffs alleged that they received substantially less pay and fewer benefits than other employees performing the same jobs because the Panama Canal Commission (PCC) denied them three types of employee benefits on account of their race and national origin. *See id.* at 332. The PCC dismissed the plaintiffs' administrative complaint as untimely, concluding that they had failed to complain within 45 days of both the date on which the PCC amended the benefit policies as well as the date they received notice of their exclusion. *See id.* at 335. We disagreed, concluding that their complaints were timely because they "allege continuing violations of Title VII, actionable upon receipt of each paycheck." *See id.* at 336. Relying on *Bazemore*, we said that the plaintiffs "do not seek relief for the PCC's initial announcement of its discriminatory policies, but rather for their continued application." *See id.* Accordingly, we held that the plaintiffs' claim survived summary judgment because "[i]f plaintiffs' claim of a present violation is ultimately proven, it will justify their request to be made whole for those

paychecks received during the 45-day window and for all paychecks issued thereafter."[4]  *Id.* at 337.  The same goes here because, unlike the dismissal in *United Air Lines v. Evans, Inc.*, 431 U.S. 553 (1977), or the failure to promote in *Law v. Continental Airlines Corp.*, 399 F.3d 330 (D.C. Cir. 2005), both of which involved isolated discriminatory acts that had continuing consequences under neutral salary systems, Shea alleges a  persistent discriminatory salary structure.  *See Morgan*, 536 U.S. at 112.

The Secretary nevertheless maintains that the *Bazemore-Anderson* analysis was put to pasture in *Morgan*.  Not so. Granted, *Morgan* restricted the "continuing violation doctrine" in holding that, while "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," 536 U.S. at 122, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," *id.* at 113.  But *Bazemore* survives *Morgan*; indeed, *Morgan* expressly relied on *Bazemore*.  *See id.* at 112.  In *Morgan*, the Court offered the *Bazemore* scenario—paychecks delivering less to one group of employees than another—as an example of the type of "discrete act" that *is* actionable under Title VII.  *See id.* at 111-12.  It therefore comes as no surprise that, while several sister Circuits have recognized that *Morgan* scuttled the continuing violation doctrine, none has suggested that, in doing so, the Court abandoned its holding in *Bazemore*.  *See, e.g., Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (relying on *Bazemore* to hold failures to promote constituted

---

[4] *Anderson*, which we decided three years before the *Morgan* decision, also allowed the plaintiffs to rely on the "continuing violation" theory to recover for the paychecks they received before the 45-day limitations period.  *See* 180 F.3d at 337.

11

discrete acts of discrimination); *Hildebrandt v. Ill. Dep't of Nat'l Res.*, 347 F.3d 1014, 1027 (7th Cir. 2003) ("[T]he Court in *Morgan* reaffirmed the *Bazemore* statement that each discriminatory paycheck was a separate discriminatory act that could give rise to a Title VII action."); *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1013 (7th Cir. 2003) ("In light of the fact that the Supreme Court itself is not yet ready to give up on *Bazemore*, we conclude that we are obliged to follow its rule . . . ."); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1186 (10th Cir. 2003) (noting *Morgan* cited *Bazemore* "[a]s an example"); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2nd Cir. 2003) (noting *Bazemore* provides "considerable guidance"); *cf. Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (relying on *Bazemore* to support conclusion that "discriminatory policy claim does not extend the statute of limitations"). Nor do we do so here.

The Secretary then responds that, even if *Bazemore* survives *Morgan*, its rationale does not extend to Shea's case. But the precedent she relies on to support her assertion—*Williams*, 370 F.3d 423, and *Elmenayer*, 318 F.3d 130—in fact does not. In *Williams*, the plaintiff alleged that her employer, Giant Food, failed to promote her based on her age, gender and race, *see* 370 F.3d at 427, and, in *Elmenayer*, the plaintiff alleged that his employer refused his one-time request to accommodate his religious observance requirements, *see* 318 F.3d at 133. Because in each case the complained-of act occurred outside the limitations period covered by the administrative charge each plaintiff filed with the Equal Employment Opportunity Commission (EEOC), however, each sought to proceed under the continuing violation doctrine. *See Williams*, 370 F.3d at 428; *Elmenayer*, 318 F.3d at 134. Both the *Williams* and the *Elmenayer* courts acknowledged the *Bazemore* rule but both held that *Bazemore* did not make their respective plaintiff's discrimination claim timely. *See* 370 F.3d at 429; 318 F.3d at 135. The Fourth Circuit explained that even if Williams's

allegation that the defendant's failures to promote her were part of a larger pattern of discrimination, each failure to promote nonetheless remained a discrete act of discrimination and none had occurred within the limitations period. *See Williams*, 370 F.3d at 429. The Second Circuit similarly concluded that "[o]nce the employer . . . rejected the proposed accommodation, no periodic implementation of that decision occurs, comparable to the weekly cutting of a payroll check in *Bazemore*." *Elmenayer*, 318 F.3d at 135. "Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed," it explained, "that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act." *Id.* (citing *Morgan*, 536 U.S. at 114) (emphasis in *Elmenayer*). But Shea did not attempt to breathe new life into discriminatory acts that occurred outside the limitations period by alleging they were part of a broader pattern of discrimination, as did Williams, 370 F.3d at 429, or by relying on their lingering effects in the present, as did Elmenayer, 318 F.3d at 135. Rather, Shea alleged that the State Department discriminated against him within the limitations period (and thereafter) by issuing him discriminatory payroll checks—or, as the Second Circuit stated, by its "periodic implementation" of its allegedly discriminatory diversity policy. *Id.*

The Secretary, as did the district court, finds support in the dicta contained in *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23 (D.D.C. 2001). We do not. In *Niedermeier*, the court posited that *Bazemore* and *Anderson* "stand for the proposition that when a discriminatory system is in place, each discriminatory act pursuant to that system is a new act of discrimination." *Id.* at 29. It found the rule inapplicable, however, because Niedermeier did not "state a current violation"

arising from a "discriminatory system."[5]  *Id.*  Applying this formulation of the rule, the district court here concluded that Shea's claim likewise failed because his "complaint amounted to no more than allegations of discrimination in May 1992, when he started at a lower pay grade" and did not "allege that a discriminatory system akin to those in *Bazemore* and *Anderson* was in place when he filed suit."  J.A. 8-9.  As we noted earlier, however, Shea's claim is *explicitly* premised on the existence of such a "discriminatory system."  He alleged that he was hired at a lower pay grade and continues to receive discriminatory pay pursuant to the State Department's discriminatory diversity program.  *See* J.A. 15.  Shea's allegation is thus just like the *Anderson* plaintiffs' claim that the PCC's discriminatory system, by its "continued application," " 'currently treats similarly situated employees differently.' "  180 F.3d at 336 (quoting *Lorance*, 490 U.S. at 912); *see also Law*, 399 F.3d at 334.

Nor do we agree with the Secretary that our reading of *Bazemore* "eviscerate[s] *Morgan* as well as the time requirements of Title VII."  Appellee's Br. at 10.  Given that the holding in *Morgan* relies on the holding in *Bazemore*, it is difficult to see how the application of the latter holding could "eviscerate" the former.  The two decisions dovetail: *Bazemore* holds that an employee may recover for discriminatorily low pay received within the limitations period because each paycheck constitutes a discrete discriminatory act, *see* 478 U.S. at 396, and *Morgan* rejects the continuing violation theory because "discrete discriminatory acts are not actionable if time barred,

---

[5] Before the district court offered this analysis, it concluded that "neither of these cases is new law and thus plaintiff's attempt to raise this argument post-judgment is not a sufficient ground for reconsideration." *Niedermeier*, 153 F. Supp. 2d at 29.  The court thus underlined the fact that what followed was dictum, noting that "*even considering* the merits of plaintiff's new legal argument, her claim would fail." *Id.* (emphasis added).

even when they are related to acts alleged in timely filed charges," 536 U.S. at 113.

We likewise cannot accept the Secretary's related contention that allowing Shea's claim to proceed would "severely prejudice [the Department] by forcing it to defend stale charges based on actions that allegedly occurred long ago." Appellee's Br. at 9. The Secretary is undoubtedly correct that "[s]tatutes of limitation are statutes of repose; their purpose is to quiet stale controversies, the evidence as to which may be eroded by time." *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros.*, 452 F.2d 1346, 1356 (1970). These statutes, the Supreme Court tells us, strike a balance between important but competing interests: " '[T]he period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.' " *Ricks*, 449 U.S. at 259-60 (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463-64 (1973)); *see also Lorance*, 490 U.S. at 912. But Shea's challenge to the allegedly discriminatory paychecks he received within the limitations period and thereafter has not reached that point because *Bazemore* and *Anderson* tell us that his challenge presents a claim that is protected. It is protected because the current application of a discriminatory system—here involving discriminatorily low paychecks—does not present a stale claim.

Finally, the Secretary asserts that the *Bazemore* rule is unavailable to Shea because it is limited to private class actions and to suits brought by the government *ex relatione* on a pattern-or-practice theory only. *Bazemore* is a pattern-or-practice case but we find nothing in *Bazemore* to suggest that its holding is so limited. *See* 478 U.S. at 395-96. Indeed, *Morgan* signals that it was not so limited: the Court in *Morgan* had no trouble relying on *Bazemore*'s holding despite the fact that Morgan made no pattern-or-practice allegation. *See* 536 U.S. at 112, 114 n.7.

Circuit courts have similarly rejected the Secretary's suggested limitation. *See, e.g.*, *Hildebrandt*, 347 F.3d at 1028 (holding plaintiff who did not allege pattern-or-practice discrimination could recover under *Bazemore* for "discriminatory pay received within the statute of limitations period"); *Reese*, 347 F.3d at 1013 (same); *Cardenas*, 269 F.3d at 256-58 (same).[6]

For the foregoing reasons, the judgment of the district court granting the Secretary of State's motion to dismiss is reversed and the case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

---

[6] On this point, the Secretary cites two cases but neither supports her position. In a parenthetical, she claims that the Ninth Circuit in *Cherosky* "refus[ed] to allow non-class private plaintiffs to use *Bazemore* to revive [an] action time-barred under *Morgan*." Appellee's Br. at 7. That the plaintiffs were not class members played no part in the decision and the court in fact relied on *Bazemore* in concluding that "a discriminatory policy claim does not extend the statute of limitations." *See Cherosky*, 330 F.3d at 1247-48. The Secretary also relies on *Haynie v. Veneman*, 272 F. Supp. 2d 10 (D.D.C. 2003), claiming that the district court there "declined to permit a plaintiff to use *Bazemore* to evade the limitations period, reasoning that 'although plaintiff alleges that defendant engaged in a 'pattern of racial discrimination' . . . directed against [plaintiff] and members of his family . . . this is not the type of claim intended by the [*Morgan*] Court's reference to 'pattern-and-practice' claims." Appellee's Br. at 8. But the district court did not mention any *Bazemore* limitation in observing that the plaintiff's claim that the defendant engaged in a "pattern of racial discrimination" likely did not fall within the exception the Court alluded to in *Morgan* for "allegations of systematic discrimination against a protected *class* of individuals where the alleged acts reflect an intent to discriminate against all persons in the class." *Haynie*, 272 F. Supp. 2d at 17 n.4 (emphasis in *Haynie*).

WILLIAMS, *Senior Circuit Judge*, concurring: I write separately to underscore the precise distinction that we draw, following the Supreme Court to the best of our ability, between cases where a plaintiff can recover for the current consequences of a discrete discriminatory act in a time-barred period and cases where he or she may not. The distinction turns, as I see it, on whether one may reasonably characterize the defendant employer as applying a discriminatory salary structure in the unbarred period. See Maj. Op. at 9-10.

First, of course, we put aside hostile environment claims, which under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002), are treated as continuing violations because they involve "repeated conduct" that "cannot be said to occur on any particular day." *Id*. at 115. Further, because of their cumulative character the plaintiff may not even have a claim until the behavior has persisted for some time. See *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) (citing *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)).

Among cases of discrete acts, those allowing recovery include *Bazemore v. Friday*, 478 U.S. 385 (1986), and *Anderson v. Zubieta*, 180 F.3d 329 (D.C. Cir. 1999). In *Bazemore* the state agency employers had integrated previously separate black and white agricultural extension services, but made only partial equalizing pay adjustments. 478 U.S. at 391. The Court regarded their recent conduct as persistence in a discriminatory system, as it made clear in contrasting *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977). There the plaintiff flight attendant had been fired years before because she had married; after being rehired she complained that the resulting gap in her employment history was currently affecting her seniority. The *Bazemore* Court

said that in *Evans* the "employer was not engaged in discriminatory practices at the time the respondent . . . brought suit," 478 U.S. at 396 n.6, thus implying that the *Bazemore* defendants were "engaged in discriminatory practices" in the unbarred period. And in *Anderson* the employer, the Panama Canal Commission, had started its complex and discriminatory classification system in the barred period and was applying precisely that system to plaintiffs in the unbarred period. 180 F.3d at 334-35.

On the other side are cases where a plaintiff cannot recover for a pay discrepancy in the unbarred period arising from an employer's act of alleged discrimination in a barred period. The clearest example is *Evans* itself. At least in ordinary language, it seems impossible to describe the airline as currently applying a seniority policy that itself discriminated on the basis of marital status. The Court, after all, declared the system to be "neutral in its operation." 431 U.S. at 558.

In *Lorance v. AT&T Technologies*, 490 U.S. 900 (1989), the Court applied the *Evans* model. Plaintiffs claimed that the employer's one-time change in its method of computing seniority (moving from service at a plant to service in a specific type of work) had a disparate impact on female employees, affecting their promotion and demotion (and thus their pay) in the present. *Id*. at 902-03. Although plaintiffs alleged that the *shift* had been intentionally discriminatory, the Court found their claims barred because plaintiffs failed to show, as required under the Court's cases for a successful challenge to a seniority system under § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h), a "discriminatory intent" in the unbarred period. See *Lorance*, 490 U.S. at 908-09. Again, without

linguistic contortions it would be difficult to describe the employer's ongoing system as discriminatory.

Most recently in *Law v. Continental Airlines Corp., Inc.*, 399 F.3d 330 (D.C. Cir. 2005), retired pilots requested "pay protection"—seniority-based compensation awarded pilots who were promoted to fly certain classes of aircraft but were not actually flying them—that they would have received had they not been (we assumed arguendo) discriminatorily denied promotion in a barred period. We found the pilots' claims barred in light of *Evans*. *Id*. at 334.

*Morgan*, the district court's main ground for barring Shea's claim, explicitly preserves *Bazemore*, which *Morgan* described as addressing "a discriminatory salary structure." 536 U.S. at 112. See also Maj. Op. at 10. It would be very odd to use such a term for the facts in *Evans*, *Lorance* or *Law*. The alleged wrong to each plaintiff or set of plaintiffs was an isolated act—dismissal in *Evans*, revision of seniority computation in *Lorance*, failure to promote in *Law*. The acts had consequences under the employer's non-discriminatory seniority system, to be sure, but they could hardly be described as launching a two-class pay structure based on a forbidden criterion.

Shea, however, alleges just such a structure. See Complaint at ¶ 6(b) ("[A]t the time I applied for a position . . . the Department was giving higher starting paygrades to minorities with the same qualifications I had, and lower starting paygrades to non-minorities."); ¶ 6(c) ("Because of the . . . discrimination noted [earlier], I am today receiving less pay with each paycheck than I would be if I had not been discriminated against . . . . This is a recurring violation of Title VII with the receipt of each paycheck."). We can grasp

the allegation most easily if we imagine Shea's situation in a world with no inflation and no "time in grade" pay increases. In such a world, it appears from his complaint, the State Department's current pay policy could reasonably be described as follows: "Everyone will be paid $XX,XXX except that (1) employees who have received special merit promotions or demotions will also receive whatever increments or decrements were prescribed at the relevant times, and (2) white employees hired in 1992 will receive five per cent less than they would otherwise." This would look very much like *Bazemore* and *Anderson*. It is hard to construct a similar sentence to describe the policies being applied in *Evans*, *Lorance* or *Law*.

Distinguishing currently discriminatory pay structures from other, related employer policies is hardly an exact science. Were we to start from scratch, we might find more transparent criteria. But the distinction advanced above appears to reconcile the cases. We therefore follow it here.