Rebecca A. ZUURBIER,
M.D., Appellant,

v.

MEDSTAR HEALTH, INC.,
et al., Appellees.

No. 05–CV–13.

District of Columbia Court of Appeals.

Argued Feb. 24, 2006.

Decided April 6, 2006.

Peter C. Cohen, with whom Elaine Charlson Bredehoft, Reston, VA, was on the brief, for appellant.

Keith J. Harrison, Washington, DC, with whom Daniel M. Creekman, New York City, was on the brief, for appellees.

Before WASHINGTON, Chief Judge, and SCHWELB and FISHER, Associate Judges.

SCHWELB, Associate Judge:

### I.

From April 1, 1993 until October 14, 2002, Rebecca A. Zuurbier, M.D., was a member of the medical staff at Georgetown University Hospital (the Hospital). Dr. Zuurbier served, *inter alia*, as the Director of the Breast Imaging Division and as Director of Radiology Resident Education. In her initial complaint, filed on July 15, 2003, against the sole original defendant, MedStar Health, Inc. (MSHI), which purchased the Hospital in 2000, Dr. Zuurbier alleged that throughout the period of her employment at the Hospital, she was significantly underpaid on account of her sex. Dr. Zuurbier asserted claims, *inter alia*, of constructive discharge and of sex discrimination in employment, all in violation of the District of Columbia Human Rights Act (DCHRA). D.C.Code §§ 2–1401.01 *et seq.* (2001). She further alleged that she and other female professional employees had been subjected to a hostile environment based on sex, also in violation of the DCHRA.[1]

MSHI filed a motion to dismiss the original complaint, alleging that MSHI was not Dr. Zuurbier's employer. On October 9, 2003, Dr. Zuurbier filed her First Amended Complaint (FAC), in which she joined as defendants two subsidiaries of MSHI, namely, MedStar Georgetown Medical Center, Inc. (MGMCI) and MGMC L.L.C. (MedStar Georgetown Medical Center Limited Liability Company). Following the removal of the case to the United States District Court and its remand to the Superior Court, see note 1, *supra*, the trial judge granted leave to Dr. Zuurbier to file a Second Amended Complaint (SAC) in which she refined certain allegations made in the FAC.

The two MedStar subsidiaries which had first been joined in Dr. Zuurbier's FAC filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment. These defendants asserted, in substance, that with respect to the constructive termination claim, the District of Columbia Human Rights Act's one-year statute of limitations, D.C.Code § 2–1403.16(a) (2001), began to run on July 15, 2002, the date on which Dr. Zuurbier submitted her resignation; that the FAC in which these subsidiaries were named as defendants was not brought within one year of Dr. Zuurbier's announcement that she would resign; that the FAC did not "relate back" to the date of the initial

---

1. Dr. Zuurbier's initial complaint also included certain federal statutory claims, and these allegations precipitated removal of the case to the United States District Court. Dr. Zuurbier subsequently voluntarily dismissed her federal claims, and the case was remanded to the Superior Court.

complaint, *see* Super. Ct. Civ. R. 15(c); and that the SAC, which the judge deemed filed as of the date of the FAC, was therefore time-barred as to the two subsidiaries.

The defendants further asserted that Dr. Zuurbier's claim of disparate pay based on her sex was almost entirely barred by the statute of limitations. The defendants argued that each allegedly discriminatory paycheck was a discrete act, and Dr. Zuurbier's suit was untimely with respect to any salary check pre-dating October 14, 2002. The only salary payment received by Dr. Zuurbier within the one-year period preceding the institution of suit was her final check, dated October 31, 2002. According to the defendants, the complaint was otherwise time-barred.

Dr. Zuurbier took the position that the action was timely in all respects. She asserted that the statute of limitations did not begin to run with respect to the claim of constructive discharge until October 14, 2002, when she ceased to work for the Hospital,[2] and that her action against all of the defendants had been instituted within a year of her departure. In the alternative, Dr. Zuurbier contended that in the original complaint, the naming of MSHI as the sole defendant constituted a simple error in identifying her employer, and that, in conformity with Rule 15(c), the FAC and the SAC therefore related back to the date of the original complaint. Dr. Zuurbier also argued that the defendants' alleged sex discrimination in pay against her continued for the entire eight-year period during which she worked at George-town University Hospital, affecting every salary payment made to her; that it constituted a "continuing violation" or a "pattern or practice"; and that she was therefore entitled to be made whole in relation to each and every paycheck that she received while she was an employee of the Hospital.

In an order entered on June 16, 2004 (Order No. 1), the trial judge granted summary judgment in favor of the defendants with respect to the constructive discharge claim, and he directed further briefing as to the disparate pay claim. In a second order entered on November 16, 2004 (Order No. 2), the judge held that Dr. Zuurbier's claim that she received a lower salary because of her sex was time-barred except as to the paycheck that she received on October 31, 2002.[3] The judge also ruled that Dr. Zuurbier could not prevail on a "hostile environment" theory.[4]

Dr. Zuurbier filed a timely notice of appeal. We reverse Order No. 1. We agree with the judge's reasoning in Order No. 2, but modify that Order to conform to our disposition of the issue decided in Order No. 1; we affirm Order No. 2 as modified.

## II.

Dr. Zuurbier contends that the trial court erred in holding that her constructive discharge claim was untimely. She argues that the FAC and the SAC relate back to the date of the initial complaint,

---

**2.** After submitting her resignation on July 15, 2002, Dr. Zuurbier remained on the staff of Georgetown University Hospital for approximately three months in order to comply with her obligations under her contract of employment.

**3.** Dr. Zuurbier voluntarily dismissed her action as to this single paycheck, so that no

further trial court action is required, and the trial court's orders are final for purposes of appeal.

**4.** Dr. Zuurbier did not rely on a "hostile environment" theory in opposing the motion for summary judgment, and she has not urged such a claim on appeal.

which was filed on July 15, 2003. We agree.[5]

■ Rule 15 (c) of the Superior Court's Rules of Civil Procedure, which is identical to Fed.R.Civ.P. 15(c), *see Pritchett v. Stillwell*, 604 A.2d 886, 888 n. 2 (D.C.1992), provides in pertinent part as follows:

> An amendment of a pleading relates back to the date of the original pleading when ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted ... and ... the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

"Relation back is designed to foster the resolution of disputes on their merits rather than on the basis of pleading technicalities, to the extent that resolution on the merits is consistent with the policies underlying statutes of limitations."[6] *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 556 (D.C.2001). Accordingly, Rule 15(c) is to be liberally construed. *Pritchett*, 604 A.2d at 890 (citations omitted).

■ In the present case, it appears from Dr. Zuurbier's uncontradicted affidavit that MSHI purchased Georgetown University Hospital in or about July 2000. The other two defendants, which were not joined until Dr. Zuurbier filed the FAC, are subsidiaries of MSHI. All three defendants have MedStar in their names:

1. MedStar Health, Inc.

2. MedStar Georgetown Medical Center, Inc.

3. MGMC L.L.C. (MedStar Georgetown Medical Center Limited Liability Company)

Dr. Zuurbier asserted in her affidavit, dated May 20, 2004, that "[t]he MedStar entities and subsidiaries are organized in a very confusing manner."

Although the only defendant named in the FAC was MSHI, the address of that defendant was identified in that pleading as 3800 Reservoir Road, N.W., Washington, D.C. 20004, which is the street address of Georgetown University Hospital.[7] It is thus apparent that Dr. Zuurbier and her attorneys were attempting to sue the entity in the MedStar corporate family which was located at, and which operated, Georgetown University Hospital, but that in preparing the complaint, they simply

---

**5.** In light of our resolution of this issue in favor of Dr. Zuurbier, we do not reach the question whether the limitations period for constructive discharge began to run, as the trial judge held, on July 15, 2002, when Dr. Zuurbier announced her resignation effective October 14, 2002, or whether, as Dr. Zuurbier asserts, it did not begin to run until October 14, 2002, when she ceased to work at the Hospital. Dr. Zuurbier's position is, however, difficult to reconcile with our decision in *Hancock v. Bureau of Nat'l Affairs*, 645 A.2d 588, 590 (D.C.1994).

**6.** This appeal turns on the proper construction of Rule 15(c), not of the statute of limitations. To the extent that the policies underlying the statute of limitations are implicated,

however, we have stated, in relation to cases brought pursuant to the Human Rights Act, that "[i]f there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge." *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C.2003) (en banc) (quoting *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 401 (D.C.1991)) (citations in *Simpson* omitted).

**7.** We were advised at oral argument that MedStar Health, Inc.—MSHI—has its headquarters in Maryland, and not at Georgetown University Hospital.

got that entity's name wrong. We are aware of no other reasonable explanation. As Dr. Zuurbier represented in her affidavit,

> a simple mistake had been made in naming MedStar as my actual employer, when, it appears, my actual employer was the MedStar subsidiaries. The intent at all times was to sue my actual employer and to name the right MedStar entities in the suit.

The defendants contend that "where a plaintiff makes an intentional or strategic decision not to name parties, the relation-back mechanism of Rule 15(c) does not apply." We conclude, however, that the record does not reflect an intentional or strategic decision. Although the defendants speculate that in the original complaint, which was filed on July 15, 2003, counsel for Dr. Zuurbier had decided, for strategic reasons, not to name the two subsidiaries as defendants, Dr. Zuurbier expressly denied in her affidavit that there was a "strategic decision not to sue these MedStar entities and to only sue MedStar." This affidavit stands uncontradicted in the record.

It is difficult to understand how the decision to sue only MSHI, which was not Dr. Zuurbier's employer, could reasonably be viewed as "strategic." Such a "strategy" provided no prospects for success and, from the alleged strategist's perspective, it could only lead to disaster. On the record before us, and as a matter of common sense, the sole reasonable explanation of the initial decision by Dr. Zuurbier to sue

only MSHI is that her attorneys were operating under a mistake of fact as to the identity of the MedStar entity that was operating Georgetown University Hospital. This explanation is also consistent with, and reinforced by, the attribution of the Reservoir Road address to MSHI in the original complaint.

This case thus presents the very kind of situation which Rule 15(c) was designed to address; the amendment changed "the naming of the party against whom the claim was asserted." [8] As the Supreme Court explained in *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Federal Rules of Civil Procedure "reject the approach that pleading is a game of skill in which one misstep by counsel may be determinative of the outcome." Our own jurisprudence construing the Superior Court's Rules is to the same effect, *see, e.g., Washkoviak v. Student Loan Mktg. Ass'n,* 849 A.2d 37, 39 (D.C. 2004); *Carter–Obayuwana v. Howard Univ.,* 764 A.2d 779, 787 (D.C.2001); and Rule 15(c) must be construed accordingly. At least absent a showing of prejudice, counsel's mistake in failing initially to identify correctly the MedStar subsidiaries that operate Georgetown University Hospital should not be permitted to prevent resolution of the dispute on its merits.

■ We recognize, of course, that for an amendment to relate back to the original pleading, "the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense."

---

8. This case is distinguishable in a dispositive respect from *Rendall–Speranza v. Nassim,* 323 U.S.App.D.C. 280, 107 F.3d 913 (1997). In that case, the plaintiff initially made "an error of judgment about whether an employer was liable for the act of its employee," and thus failed, in her initial complaint, to name the employer as a defendant. She subsequently sought to join the employer in an amended complaint, but the Court of Appeals reversed the trial court's decision permitting her to do so. In *Rendall–Speranza,* the plaintiff's error was one of *law,* concerning the substantive liability of the employer. In the present case, on the other hand, the plaintiff made a mistake of *fact* concerning the *identity* and *name* of the employer.

*Arrington v. District of Columbia,* 673 A.2d 674, 679 (D.C.1996). As the court stated in *Rendall–Speranza,*

> A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—*unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were.*

323 U.S.App. D.C. at 285, 107 F.3d at 918 (emphasis added). In this case, however, there has been no prejudice. Indeed, in their brief, the defendants have not claimed that they have been prejudiced in any way.[9] The defendants are all part of the MedStar corporate family, they have the same agent for service of process, and they are represented by the same counsel. The suit pertains to Georgetown University Hospital, where the two defendant-subsidiaries are located. The correction in the FAC and the SAC—*i.e.,* the proper identification of the entities constituting MedStar's presence at the Hospital—could come as no surprise to the affected MedStar affiliates, and their ability to defend the case has not been impaired. Accordingly, we conclude as a matter of law that the claim of constructive discharge was timely.

### III.

■ Of the paychecks on which Dr. Zuurbier predicates her sex discrimination in pay claim, she received only four—those issued at the end of July, August, September, and October 2002—during the year preceding her institution of this action on July 15, 2003. She received all of her other paychecks more than a year before suit was brought. Dr. Zuurbier contends, however, that the receipt of even a single paycheck within the limitations period renders the action timely as to all of the earlier paychecks which she received while employed at Georgetown University Hospital. She asserts that the October 31, 2002 check was a part of an ongoing pattern of disparate pay based on sex, and that "[her] unequal compensation over the course of eight years is actionable in its entirety." Dr. Zuurbier thus relies on a "continuing violation" theory, which she sometimes also characterizes as a "pattern or practice" of sex discrimination. The defendants contend, on the other hand, that each allegedly discriminatory paycheck is a "discrete act," and that the action is time-barred with respect to all discrete acts which occurred more than one year before the suit was brought. In Order No. 2, the trial judge ruled in favor of the defendants and, although there is some split of authority on the issue, we are persuaded by the judge's reasoning and by the decisions which support the defendants' position.

It appears that prior to the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), "most courts appear[ed] to treat pay discrimination claims as continuing violations." *Cardenas v. Massey,* 269 F.3d 251, 257–58 (3d Cir. 2001) (citation omitted); *see also Anderson v. Zubieta,* 336 U.S.App. D.C. 394, 400 & n. 7, 180 F.3d 329, 335 & n. 7 (1999). This

---

**9.** At the oral argument of this appeal, defense counsel asserted, in response to questions from the court, that the defendants suffered some prejudice because, as a result of the failure to name the two subsidiaries in the original complaint, the case has been delayed by some three months. We do not believe that such a comparatively brief delay in a protracted case constitutes the kind of prejudice contemplated in Rule 15(c). Indeed, delay may often prejudice the plaintiff, who has the burden of proof, rather than the defendant. In any event, by failing to claim prejudice in their brief, the defendants have waived the point. *See In re Shearin,* 764 A.2d 774, 778 (D.C.2000).

was likewise the position of the Equal Employment Opportunity Commission, which contended in *Cardenas* that "an individual may challenge allegedly discriminatory wage payments so long as one such payment falls within the limitations period." *Cardenas*, 269 F.3d at 257. The courts that so held generally relied upon the Supreme Court's unanimous opinion in *Bazemore v. Friday*, 478 U.S. 385, 395–96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam) (Brennan, J., concurring, joined by all other members of the Court), wherein it was stated that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern began prior to the effective date of Title VII." [10] *See Anderson*, 336 U.S.App. D.C. at 400, 180 F.3d at 335; *Cardenas*, 269 F.3d at 257.

In *Morgan*, the Supreme Court addressed the applicability of the "continuing violation" doctrine to employment discrimination disputes. The Court carefully distinguished, for statute of limitations purposes, between allegations of a "hostile environment" and claims based on discrete discriminatory acts. The Court held that the "continuing violation" principle applies to hostile environment claims; "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." 536 U.S. at 117, 122 S.Ct. 2061. The Court concluded, on

the other hand, that "[d]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061. The Court explained that "[e]ach discriminatory act starts a new clock for filing charges alleging the act," *id.*, and elaborated as follows:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Morgan* can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

*Id.* at 114, 122 S.Ct. 2061.

*Morgan* did not directly involve the limitations applicable to claims of disparate pay, but the Court nevertheless opined on the issue, citing its prior decision in *Bazemore*, 478 U.S. at 395, 106 S.Ct. 3000:

> [W]hen considering a discriminatory salary structure, the Court [in *Bazemore*] noted that although the salary discrimination began prior to the date that the act was actionable under Title VII, "each week's paycheck that delivered less to a black than to a similarly situated white is a wrong actionable under Title VII."

*Id.* at 112, 122 S.Ct. 2061.[11] Although it was not necessary for the Court to decide

---

**10.** The Court added in *Bazemore* that "[t]he Court of Appeals plainly erred in holding that the pre-Act discriminatory difference in salaries did not have to be eliminated." *Id.* at 396, 106 S.Ct. 3000.

**11.** It is worth noting that the issue in *Bazemore* was quite different from that in *Morgan*. In *Bazemore,* the Court noted that each discriminatory paycheck constituted an individual wrong in order to establish that the plaintiff was entitled to relief with respect to each

check even though the underlying discriminatory policy was adopted before the defendant's conduct became actionable. In *Morgan*, on the other hand, this principle was asserted as a limitation upon the plaintiff's recovery. This limitation arguably appears strained where the allegation of discrimination is based on a long-term contract and payment each month is realistically not an independent discriminatory act but an implementation of the allegedly discriminatory con-

whether a single discriminatory paycheck within the limitations period was sufficient to permit a plaintiff to invoke the "continuing violation" doctrine, the Court's observations on this issue—each discriminatory paycheck is, in effect, a new and discrete wrong—appear to be a part of, and consistent with, its underlying analysis of discrete discriminatory acts. Accordingly, the Court's comment cannot readily be dismissed as dictum. *See Cross v. Harris,* 135 U.S.App. D.C. 259, 269 n. 64, 418 F.2d 1095, 1105 n. 64 (1969). In *Lively,* our en banc court adopted, for purposes of construing the DCHRA, the Supreme Court's hostile environment analysis, 830 A.2d at 876, and noted the Court's recognition in *Morgan* of "the fundamental difference between a discrete discriminatory act and a hostile environment claim." *Id.* at 889–90.[12]

Since *Morgan,* several courts have held that allegations of prohibited discrimination in the payment of wages or salaries are not subject to the continuing violation doctrine. In *Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014 (7th Cir.2003), for example, a female plaintiff alleged disparate pay and sex discrimination in violation of Title VII of the Civil Rights Act of 1969, 42 U.S.C. §§ 2000e *et seq.* She argued that the defendant's alleged practice of paying the plaintiff a lower salary because of her sex was in effect from 1991 to 1997, and that it constituted a continuing violation. Accordingly, the plaintiff asserted that "her receipt of paychecks at a discriminatory rate after July 10, 1997, satisfied the statute of limitations ... al-

low[ing] her to recover for the entire period [from] 1992 through 1997." *Id.* at 1025. Prior to *Morgan,* the Court of Appeals would apparently have agreed with this contention. Relying on the Supreme Court's decision in that case, however, the court abandoned its earlier precedent and held that each of the plaintiff's paychecks constituted a discrete allegedly discriminatory act and was not a part of a single continuing violation. The court stated:

> *Morgan's* foreclosure of the continuing violation doctrine for discrete discriminatory acts clearly requires a re-evaluation of our earlier interpretation. Using *Morgan* as our guide, therefore, we must conclude that each of Dr. Hildebrandt's paychecks that included discriminatory pay was a discrete discriminatory act, not subject to the continuing violation doctrine.

*Id.* at 1028.

In *Shea v. Rice,* 366 U.S.App.D.C. 178, 409 F.3d 448 (2005), the court emphatically rejected the position urged on us by Dr. Zuurbier:

> In *Morgan,* the Court foreclosed the use of the "continuing violation" doctrine to restore an untimely claim involving a separate act of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." [536 U.S.] at 113–14, 122 S.Ct. 2061. It held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061. "Each discrete discriminatory act," the Court explained, "starts a new clock for

tract. *Cf. Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) ("It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the order under discussion .... General expressions transposed to other facts are often misleading."). The parties have not brought to our attention,

however, any authority distinguishing *Morgan* on this basis, and we know of none.

**12.** The question whether, for purposes of the statute of limitations, each discriminatory paycheck is a discrete discriminatory act was not before the court in *Lively.*

filing charges alleging that act." *Id. Morgan dooms any hope Shea entertained that his current (and allegedly discriminatory) paychecks can resurrect his otherwise untimely challenges to the paychecks he received before January 12, 2001—or 180 days before he filed his grievance.*

366 U.S.App.D.C. at 181, 409 F.3d at 451 (emphasis added).[13] Although post–1971 decisions of the United States Court of Appeals for the District of Columbia Circuit are not binding on this court, *see Hornstein v. Barry,* 560 A.2d 530, 536–37 n. 15 (D.C.1989) (en banc); *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), "we believe that we should treat [Shea] as persuasive authority both on the basis of its reasoning and in the interest of harmony between court systems and uniformity of result in the same geographic area." *Hornstein,* 560 A.2d at 536–37 n. 15.

Other courts have also construed *Morgan* as requiring the result reached in *Hildebrandt* and *Shea. See, e.g., CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 992 (7th Cir.2002) (noting "the contrast between a continuing wrong, such as deliberate indifference to a prisoner's medical treatment, and discrete acts, such as consistently underpaying an employee because of her sex") (citing *Morgan;* other citations omitted); *Reese v. Ice Cream Specialties, Inc.,* 347 F.3d 1007, 1013 (7th Cir.2003) ("Each paycheck is the kind of discrete act to which the Court referred in [*Morgan*]; thus, checks corresponding to pay periods before the 300–day limit are time-barred, but those within it may form the basis of a claim"); *Quarless v. Bronx–Lebanon Hosp. Ctr.,* 228 F.Supp.2d 377, 382 (S.D.N.Y.2002) ("Because each paycheck that the Plaintiff received was an (alleged) immediate and individual wrong which gave rise to a separate disparate pay claim, the Plaintiff cannot use the continuing violation doctrine to render timely any disparate pay violations which occurred outside the 300–day statute of limitations") (citing *Morgan*); *Inglis v. Buena Vista Univ.,* 235 F.Supp.2d 1009, 1023 (N.D.Iowa 2002) ("Because each discriminatory paycheck is unlawful, issuance of such a paycheck is a discrete act of discrimination that, like a termination, a failure to promote, or refusal to hire, is easily identifiable, its occurrence can be pinpointed in time, and is itself actionable"; the court in *Inglis* went on to state that the holding in *Morgan* that the continuing violation doctrine does not apply to discrete acts therefore precludes application of that doctrine to discriminatory paychecks, *id.* at 1024–26). Although Dr. Zuurbier has invited our attention to some limited post-*Morgan* decisions contrary to the cases that we have cited above, the cases on which she relies are either based only on pre-*Morgan* authority or, in our view, fail to come to grips with apparently dispositive language in *Morgan.*[14] While

---

**13.** In *Shea* the court also reconciled the Supreme Court's decisions in *Bazemore* and *Morgan:*

> The two decisions dovetail: *Bazemore* holds that an employee may recover for discriminatorily low pay received within the limitations period because each paycheck constitutes a discrete discriminatory act, *see* 478 U.S. at 396, 106 S.Ct. 3000, and *Morgan* rejects the continuing violation theory because "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," 536 U.S. at 113, 122 S.Ct. 2061. 366 U.S.App.D.C. at 185, 409 F.3d at 455.

**14.** In *Ryan v. Gen. Mach. Prods.,* 277 F.Supp.2d 585, 595 (E.D.Pa.2003), the court stated that "sex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act." The court relied, however, on *Cardenas,* 269 F.3d at 257, which was decided *before Morgan.*

In *Tademe v. St. Cloud State Univ.,* 328 F.3d 982, 989 (8th Cir.2003), the court assumed,

the issue cannot be viewed as altogether one-sided, we conclude that the defendants have substantially the better of the argument and that the trial judge resolved the issue correctly.

## IV.

We have held in Part II of this opinion that the FAC and the SAC, in each of which the MedStar subsidiaries are named as defendants, relate back to the original complaint, which was filed on July 15, 2003. Accordingly, as we have noted, four of Dr. Zuurbier's pay checks—those for July, August, September, and October 2002—were issued to her less than one year before she brought suit, and they therefore are not time-barred. Dr. Zuurbier has, however, dismissed her claim for the October 31, 2002 paycheck. Her disparate pay claim on remand is therefore limited to the July, August, and September 2002 checks.

## V.

For the foregoing reasons, the judgment appealed from is reversed in part, modified in part, and affirmed in part as modified. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*

without deciding, that the continuing violation was applicable, two years after *Morgan*, to disparate pay claims; in support of its assumption, however, the court relied primarily on pre-*Morgan* authority, and did not analyze in any depth the language in *Morgan* which the courts in *Hildebrandt; Shea; Reese,* and *Quarless* found dispositive.

In *Rathbun v. Autozone, Inc.,* 253 F.Supp.2d 226, 231 (D.R.I.2003), *aff'd on other grounds,* 361 F.3d 62 (1st Cir.2004), the district court, having rejected the applicability of the continuing violation doctrine to other discrete acts, stated that "with respect to the unequal pay claims, the Plaintiff's 'continuing violation' doctrine argument holds more water." The court did not, however, focus upon the passage in *Morgan* which treats each discriminatory paycheck as a discrete unlawful act. The court ultimately granted summary judgment in favor of the defendant. The *Morgan* issue was not addressed by the Court of Appeals, which affirmed the award of summary judgment.