**Enid W. WEBER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 05–1290C.

United States Court of Federal Claims.

July 11, 2006.

ing loss, even though the two measures produce

Michael P. Deeds, Kestell & Associates, Washington, D.C.

Jeffrey S. Pease, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Lindsay E. Williams, Trial Attorney, Commercial Litigation Branch.

### OPINION AND ORDER

LETTOW, Judge.

This equal pay case was transferred to the court from the U.S. District Court for the District of Columbia ("district court"). The plaintiff, Enid W. Weber, alleges that the National Labor Relations Board ("NLRB" or "Board") engaged in gender discrimination and violated the Equal Pay Act of 1963, Pub.L. No. 88–38, § 3, 77 Stat. 56, 56–57

different figures or use different calculations.").

(codified in relevant part at 29 U.S.C. § 206(d)). In her first of two claims, Ms. Weber contends that the NLRB failed to provide equal pay for equal work while she performed the duties of a Deputy Executive Secretary in the Office of the Executive Secretary from 1995 to 1998, compared to males who performed the same or similar duties. As a second claim, Ms. Weber asserts that the NLRB did not provide equal pay for equal work in her subsequent temporary assignment as Special Assistant to the Chairman during a five-month period in 1998. Respecting both claims, Ms. Weber avers that the NLRB's actions were willful.

Ms. Weber initially filed her complaint *pro se* in the district court on April 19, 2001, alleging that the NLRB had violated both the Equal Pay Act and Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, Tit. VII, §§ 701–16, 78 Stat. 241, 253–66 (codified, as amended, at 42 U.S.C. §§ 2000e to 2000e–17) ("Title VII"). In two separate opinions, the district court dismissed or granted summary judgment in defendant's favor on all of Ms. Weber's claims except those arising under the Equal Pay Act, which claims the district court transferred to this court. *See Weber v. Hurtgen,* 297 F.Supp.2d 58, 62 (D.D.C.2003); Memorandum and Opinion, *Weber v. Hurtgen,* Civil Case No. 01–CV–00862 (RJL) (D.D.C. Mar. 17, 2005). Ms. Weber thereafter filed an amended complaint *pro se* in this court on December 28, 2005, and subsequently retained counsel to represent her. *See* Order of May 11, 2006 (granting substitution of counsel).

At this juncture, the case comes before the court on the government's motion for partial dismissal. The government argues that part of Ms. Weber's first claim is barred by the statute of limitations applicable to the Equal Pay Act. Specifically, the government avers that under the three-year statute of limitations pertinent to willful violations of the Equal Pay Act, 29 U.S.C. § 255(a), this court lacks subject matter jurisdiction over that portion of Ms. Weber's first claim that accrued more than three years from the date she initially filed her complaint in the district court, *i.e.,* April 19, 1998. A hearing on the government's motion was held on June 7, 2006. For the reasons set forth below, the government's motion for partial dismissal is granted.[1]

## BACKGROUND[2]

Ms. Weber, a Hispanic woman, has worked continuously at the NLRB since 1971. *Weber,* 297 F.Supp.2d at 60. In 1975, she was promoted to Associate Executive Secretary at Federal General Schedule ("GS") pay grade 13,[3] *see* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") at 2, and since 1989, Ms. Weber has held the position of Associate Executive Secretary to the Chairman with a corresponding GS–15 pay designation. *Id.; Weber,* 297 F.Supp.2d at 61.

In April 1980, Ms. Weber filed suit against the NLRB pursuant to the Equal Pay Act and Title VII alleging that "she had not received pay equal to her male co-workers in similarly situated positions." Pl.'s Opp. at 2. The following year, the Equal Employment Opportunity Commission ("EEOC") concluded that the NLRB was in violation of the Equal Pay Act, and eleven years later the District Court for the District of Columbia entered an order finally resolving those claims. *Id.;* Compl. ¶¶ 15–16; *Weber,* 297 F.Supp.2d at 61.

1. Ms. Weber had sought leave to amend her complaint and add a third claim under the Equal Pay Act encompassing the time period from September 21, 1998 to June 25, 1999. Plaintiff's Opposition to Defendant's Motion to Dismiss at 3 n. 2. At the hearing on June 7, 2006, the court heard arguments from both parties on this request, and then asked the parties for additional briefing because the issues associated with the proposed amendment had been addressed only in summary fashion. Order of June 7, 2006. On June 22, 2006, plaintiff filed a Withdrawal of Motion to Amend Complaint. Consequently, the court will not consider Ms. Weber's now-withdrawn motion to amend.

2. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for purposes of the pending motion.

3. For a more detailed description of the Federal General Schedule and the Senior Executive Schedule ("SES"), see 5 U.S.C. § 5332.

From April 21, 1995 to April 20, 1998, Ms. Weber avers that she performed the duties of a Deputy Executive Secretary while serving as an Associate Executive Secretary to the Chairman. Pl.'s Opp. at 2.[4] During that same period, the NLRB did not have a Deputy Executive Secretary or an Acting Deputy Executive Secretary. Compl. ¶ 10. Thereafter, from April 21, 1998 through September 20, 1998, Ms. Weber was temporarily assigned to the Office of the Chairman as a Special Assistant to the Chairman. Id. ¶ 20.[5] During both time periods, Ms. Weber alleges that she was paid less than similarly-situated males who performed the same or similar work. Pl.'s Opp. at 2.

Beginning on September 3, 1997, Ms. Weber informally raised her concerns with respect to her pay with the EEO office at the NLRB, and from 1998 through 2000 she submitted various memoranda delineating the duties she performed in her various positions. Compl. ¶¶ 29–34. On January 11, 1999, the EEO office of the NLRB notified Ms. Weber of her right to file a discrimination complaint. Defendant's Motion for Partial Dismissal ("Def.'s Mot.") Ex. 1 (EEO Counselor's Report (Mar. 1, 1999)). Thereafter, on January 22, 1999, Ms. Weber filed her formal administrative EEO complaint with the agency, alleging that the NLRB failed "to comply with the Equal Pay Act and [engaged in] discrimination and retaliation within the meaning of Title VII." See Compl. ¶ 1. On January 12, 2001, the NLRB issued Ms. Weber a "Right to Sue" letter. Id. ¶ 2.

On April 19, 2001, Ms. Weber filed her complaint *pro se* in the district court, "arguing that her rights under the E[qual Pay Act] were violated when, because of her gender, she was denied equal pay for equal work from April 21, 1995, to April 20, 1998, and from April 21, 1998, to September 21, 1998." *Weber*, 297 F.Supp.2d at 61. In her complaint in the district court, Ms. Weber also included allegations that the NLRB had violated Title VII through various acts of gender and national-origin discrimination and retaliation. *Id.* On September 14, 2001, Mr. Hurtgen, the NLRB Chairman and named defendant in the case, filed a motion to dismiss, or in the alternative, for summary judgment. *Id.* Ms. Weber thereafter filed a cross-motion for summary judgment. *Id.*

The district court, in its first of two opinions in the case, ordered Ms. Weber's claims under the Equal Pay Act transferred to the Court of Federal Claims on the ground that the district court lacked subject matter jurisdiction of those claims under the "Little Tucker Act." *Weber*, 297 F.Supp.2d at 62 (noting that Ms. Weber's request for damages with respect to her EPA claims "greatly exceeds $10,000"); *see* 28 U.S.C. § 1346(a)(2).[6] With respect to Ms. Weber's Title VII claims, the district court denied Ms. Weber's cross-motion for summary judgment, granted the defendant's motion for summary judgment in part, and invited the defendant to file a renewed motion for summary judgment on the remaining Title VII

---

**4.** The duties of a Deputy Executive Secretary, SES level 4, allegedly were shared with the Executive Secretary and included "the overall responsibility for planning and directing the judicial management of the" NLRB, responsibility "for immediate coordination of case processing," being the "professional, technical and administrative consultant to Board Members, giving advice and making recommendations on matters of the highest policy level, involving problems of national significance and outstanding difficulty," administering various deadlines, schedules and records, conducting and supervising a range of correspondence, and serving as liaison between the NLRB and a wide spectrum of individuals, agencies, labor organizations, and elected and government officials. Compl. ¶ 25.

**5.** The duties of a Special Assistant to the Chairman, paid at an SES level, allegedly included

"the conducting of executive level studies; analysis and preparation of reports to increase awareness of the" NLRB's activities; "coordination of conferences;" "and serving as advisor to the Chairman on cases coming to the [NLRB]." Compl. ¶ 28.

**6.** 28 U.S.C. § 1346(a) states in pertinent part: "The district courts shall have original jurisdiction ... of:

. . . .

(2) Any other civil action or claim against the United States, *not exceeding $10,000 in amount*, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.
(Emphasis added.)

claims. *Weber,* 297 F.Supp.2d at 69.[7] The district court subsequently denied Ms. Weber's motion for reconsideration of the court's decision denying her motion for summary judgment. Order of Jan. 15, 2004, *Weber v. Hurtgen,* Civil Case No. 01–CV–00862 (RJL) (D.D.C.).

On December 12, 2003, Mr. Hurtgen renewed his motion for summary judgment on Ms. Weber's remaining Title VII claims, which motion the district court granted. Memorandum and Opinion, *Weber v. Hurtgen,* Civil Case No. 01–CV–00862 (RJL) (D.D.C. Mar. 17, 2005). The district court concurrently dismissed the case with prejudice. Final Judgment Order, *Weber v. Hurtgen,* Civil Case No. 01–CV–00862 (RJL) (D.D.C. Mar. 17, 2005). On June 13, 2005, the district court denied Ms. Weber's motion for reconsideration. Order of June 13, 2005, *Weber v. Hurtgen,* Civil Case No. 01–CV–00862 (RJL) (D.D.C.). Ms. Weber thereafter filed an appeal *pro se* of the district court's decisions with respect to her Title VII claims, which appeal is currently pending before the U.S. Court of Appeals for the D.C. Circuit. *See Weber v. Battista,* Case No. 05–5309 (D.C.Cir. filed Aug. 23, 2005).

Ms. Weber's claims under the Equal Pay Act were transferred to this court on December 13, 2005. Promptly thereafter, Ms. Weber filed an amended complaint *pro se* on December 28, 2005. The government subsequently filed an answer to the complaint and a motion for partial dismissal on March 29, 2006. Before Ms. Weber responded to the government's motion, she retained counsel, and that counsel has represented her in all subsequent proceedings. A hearing on the government's motion was held on June 7, 2006.

### STANDARDS FOR DECISION

The court's subject matter jurisdiction must be established before the court may proceed to the merits of any action. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210

(1998). Ms. Weber, as the plaintiff in this case, carries the burden of proving that this court possesses subject matter jurisdiction over her claims. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). In determining whether jurisdiction exists in a particular case, the court must accept as true the facts asserted in the plaintiff's complaint and "draw all reasonable inferences in favor of the plaintiff." *Goel v. United States,* 62 Fed. Cl. 804, 806 (2004) (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)).

As a general matter, "[a]ll federal courts are courts of limited jurisdiction." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998). This court is no exception. In particular, this court's subject matter jurisdiction is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *Id.* This waiver "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Tucker Act constitutes explicit consent to suit for claims "against the United States founded either upon the Constitution, or any Act of Congress . . ., or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act alone, however, is insufficient to confer jurisdiction. The plaintiff must also identify a substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Furthermore, the "statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir. 1988); *see* 29 U.S.C. § 255(a).

---

7. The district court specifically denied summary judgment, but permitted the defendant to file a renewed motion for summary judgment on Ms. Weber's Title VII claims that related to "the change in [Ms. Weber]'s work arrangements and secretarial support." *Weber,* 297 F.Supp.2d at 69.

## ANALYSIS

Under the Equal Pay Act, this court may exercise subject matter jurisdiction over claims filed "within two years after the cause of action accrued," but if the violation of the Act was willful, a cause of action "may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).[8] "A claim first accrues within the meaning of the statute of limitations 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1455 (Fed.Cir.1997) (quoting *Brighton Village Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995) and citing *Hopland Band,* 855 F.2d at 1577).

In deciding whether a particular claim or part of a claim by Ms. Weber falls within or beyond the statute of limitations, this court is bound by the Supreme Court's decisions in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) *(per curiam),* and *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In those two decisions, the Supreme Court clarified when employment discrimination claims are timely and, in *Morgan* specifically, distinguished between continuous claims that were actionable only insofar as they involved events that occurred within the statute of limitations period and cumulative claims that could encompass events prior to that period.

▉▉▉▉ "[C]ontinuing claims" have been distinguished from "single distinct event[s] ... which [might] have continued ill effects later on." *Brown Park,* 127 F.3d at 1456. "[F]or the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Id.; see also The Dalles Irrigation Dist. v. United States,* 71 Fed.Cl. 344, 350–51 (2006).

Continuing claims that fall within the statute of limitations period are actionable while those that fall outside the period are not. *The Dalles,* 71 Fed.Cl. at 352–53. By contrast, injuries attributable to a single distinct event that occurred prior to the statute of limitations period are not actionable even though they may have adverse effects that are within the statute of limitations period. *Brown Park,* 127 F.3d at 1457 (citing *Hart v. United States,* 910 F.2d 815 (Fed.Cir.1990); *Lane v. United States,* 208 Ct.Cl. 955, 1975 WL 7116 (1975)). Yet a third category of claims involves a single claim that cumulates or matures over time through a series of events that may occur both within a statute of limitations period and prior to it, and nonetheless be fully actionable. As will be discussed, *Morgan* in part involved such a claim.

▉▉▉▉ Thus, as will appear from the discussion that follows, the underlying bases of claims may be conceptually classified, for purposes of analyzing applicability of statutes of limitations, in a hierarchy from (1) a single discrete event, whether or not ill effects continue, to (2) continuing claims involving a series of distinct events or wrongs, and to (3) a continuing, or perhaps more accurately, a cumulative wrong involving a series of incidents. Here, the arguments of the parties are aimed at whether the circumstances of this case fit most comfortably within type (2) or type (3) above.

In *Bazemore,* petitioners alleged racial discrimination with respect, in part, to their salaries while employed in North Carolina's agricultural extension program, prior to and after the program fell within the purview of Title VII. 478 U.S. at 388–91, 106 S.Ct. 3000. The Supreme Court held that "[w]hile recovery may not be permitted for pre–1972 acts of discrimination, to the extent that this discrimination was perpetuated after 1972, liability may be imposed." *Id.* at 395, 106 S.Ct.

---

8. The statute of limitations of the Fair Labor Standards Act, 29 U.S.C. § 255, which applies to the Equal Pay Act, states in pertinent part:

   Any action ... to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*] ... (a) ... may be commenced within two years after the cause of action accrued ... *except that a cause of action arising out of a willful violation may be commenced within three years* after the cause of action accrued."
   (Emphasis added.)

3000. In particular, the Court stated that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII." *Id.* (emphasis added).

Thereafter in *Morgan,* the Court revisited *Bazemore* and considered whether a plaintiff might pursue claims alleging discriminatory acts in violation of Title VII, occurring both within and beyond the applicable statute of limitations. *Morgan,* 536 U.S. at 105, 122 S.Ct. 2061. The Supreme Court applied *Bazemore* with relation to the continuing claim doctrine by reiterating that each paycheck in *Bazemore* was itself a discrete discriminatory act that violated Title VII. *Id.* at 111–12, 122 S.Ct. 2061 (quoting *Bazemore,* 478 U.S. at 395, 106 S.Ct. 3000) (invoking the facts in *Bazemore,* the Court denoted that it had previously interpreted an "unlawful employment practice" as a "discrete act," even when such a practice related to other prior acts). The Court also reaffirmed a prior holding "that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Morgan,* 536 U.S. at 112, 122 S.Ct. 2061 (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). The Supreme Court then unanimously held that the plaintiff was precluded from recovering any damages "for discrete acts of discrimination . . . that occur[red] outside the statutory time period," 536 U.S. at 105, 122 S.Ct. 2061, and that "only incidents that took place within the timely filing period are actionable." *Id.* at 114, 122 S.Ct. 2061. In addition to the facts in *Bazemore,* the Court gave as examples of "discrete acts" of employment discrimination "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* The Court did permit, however, the use of prior acts that fell outside the statutory time period "as background evidence in support of a timely claim." *Id.* at 113, 122 S.Ct. 2061.

In *Morgan,* a 5–4 majority of the Court, however, also held that an exception existed with respect to hostile work environment claims. The Court concluded that "consideration of the entire scope of a hostile work environment claim, *including behavior alleged outside the statutory time period,* is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan,* 536 U.S. at 105, 122 S.Ct. 2061 (emphasis added). The Court justified this exception on the ground that "[s]uch claims [of hostile work environment] are based on the cumulative effect of individual acts." *Id.* at 115, 122 S.Ct. 2061. In particular, the Court explained that a hostile work environment claim is unique when compared to claims based on discrete acts because the former "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

The Federal Circuit has yet to address either of the holdings in *Morgan.* However, various other circuit courts of appeals have applied the rule and exception from *Morgan* in the context of Title VII and have accordingly held that discriminatory paychecks are discrete acts.[9] In *Ledbetter v. Goodyear Tire and Rubber Co.,* 421 F.3d 1169 (11th Cir.2005), the Eleventh Circuit held that the plaintiff's claims of disparate pay were only actionable if they occurred within the limitations period of Title VII. *Id.* at 1180 (stating that "[p]ay claims do not . . . have those characteristics that led the [Supreme] Court [in *Morgan* ] to devise a separate rule governing the timing of hostile work environment claims."). *See also Reese v. Ice Cream Specialties, Inc.,* 347 F.3d 1007, 1009–10 (7th Cir.2003) (concluding that it is "relatively easy" to hold that the plaintiff's failure to receive a raise in his hourly wage is a discrete act and not similar to a hostile work

---

9. Title VII and the Equal Pay Act both relate to workplace practices and thus have an interrelationship. Indeed, Title VII specifically refers to the Equal Pay Act, stating that "[i]t shall not be an unlawful employment practice [and therefore not violate Title VII] for any employer to differ- entiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29." 42 U.S.C. § 2000e–2(h).

environment claim). Similarly, the Eighth Circuit held that based on the Supreme Court's application of the facts from *Bazemore* to its analysis in *Morgan,* each issuance of a discriminatory paycheck "represented a new Title VII violation." *Tademe v. Saint Cloud State Univ.,* 328 F.3d 982, 989 (8th Cir.2003) (holding that the only portion of the plaintiff's claim of salary discrimination that was actionable was that which fell within the statutory time period). *See also Shea v. Rice,* 409 F.3d 448, 453–54 (D.C.Cir.2005) ("In *Morgan,* the [Supreme] Court offered the *Bazemore* scenario—paychecks delivering less to one group of employees than another—as an example of the type of 'discrete act' that is actionable under Title VII."). The Seventh Circuit also grounded its decision in *Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014 (7th Cir. 2003), on the Supreme Court's reference to the pay discrimination claim in *Bazemore* as an example of discrete acts in *Morgan:* "Consequently, reading *Bazemore* in light of *Morgan,* a plaintiff cannot make timely any prior time-barred discrete acts of discriminatory pay by filing within the time frame of one discriminatory paycheck." *Id.* at 1027 (holding that each of the plaintiff's allegedly discriminatory paychecks "was a discrete discriminatory act").

Other circuits have applied the rule and exception in *Morgan* to claims based upon employment law arising in contexts other than Title VII. The Third Circuit "could 'find no principled basis upon which to restrict *Morgan* to Title VII claims'" and consequently applied the Supreme Court's holdings to a plaintiff's claim under 42 U.S.C. § 1983. *O'Connor v. City of Newark,* 440 F.3d 125, 128 (3d Cir.2006) (quoting *Sharpe v. Cureton,* 319 F.3d 259, 267 (6th Cir.2003), and citing *Hildebrandt,* 347 F.3d at 1036; *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061 (9th Cir.2002)).[10]

In a pre-*Morgan* case similar on its facts to this matter, the Second Circuit applied the Supreme Court's reasoning from *Bazemore* in a circumstance where a female professor alleged that she had been paid less than comparable male faculty in contravention of the Equal Pay Act. *Pollis v. New School for Social Research,* 132 F.3d 115, 117 (2d Cir. 1997). In *Pollis,* the Second Circuit concluded that a "cause of action based on receipt of a paycheck prior to the limitations period is untimely and recovery for pay differentials prior to the limitations period is barred irrespective of subsequent, similar timely violations." *Id.* at 119 (citing *Knight v. Columbus, Ga.,* 19 F.3d 579, 582 (11th Cir.1994)). Ultimately, the Second Circuit held that the plaintiff's recovery should have been limited to acts occurring within the Equal Pay Act's three-year statute of limitations for willful violations. *Pollis,* 132 F.3d at 119. Moreover, the Second Circuit foreshadowed the exception that the Supreme Court denoted in *Morgan* with respect to hostile work environment claims when the Second Circuit stated that "a claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action." *Id.*

In addition to *Bazemore* and *Morgan,* this court is also bound by the Federal Circuit's decision in *Brown Park* and its application of the continuing claim doctrine. Traditionally, in cases where the doctrine has been applied, every "wrong constituted an alleged violation of a statute or regulation that accrued when that particular wrong occurred, independent of the accrual of other wrongs." *Brown Park,* 127 F.3d at 1457. A predecessor, the Court of Claims, summarized the continuing claim doctrine as it is applied to military and civilian pay cases and explained that "where the payments [of salary] are to be made periodically, *each successive failure* to make

---

**10.** 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." In *O'Connor,* the plaintiff, a police officer, alleged that his superiors engaged in retaliation to punish him for exercising his First Amendment rights. 440 F.3d at 129.

proper payment gives rise to a new claim upon which suit can be brought." *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381, 385 (1962) (emphasis added) (citing *Odell v. United States*, 134 Ct.Cl. 643, 135 F.Supp. 539 (1955); *Gordon v. United States*, 134 Ct.Cl. 840, 140 F.Supp. 263 (1956); *Levadi v. United States*, 137 Ct.Cl. 97, 146 F.Supp. 455 (1956)). In *Brown Park*, the Federal Circuit affirmed the reasoning in *Friedman* that " 'periodic pay claims arising [prior to the statutory time period] are barred, but not those arising within' " the statutory time period. *Brown Park*, 127 F.3d at 1456 (quoting *Friedman*, 310 F.2d at 384); *see also Wells v. United States*, 420 F.3d 1343, 1346–47 (Fed. Cir.2005) (applying the continuing claim doctrine from *Brown Park* and concluding that the plaintiff's claim to recover monthly deductions from his military retirement pay could be "broken down into a series of independent and distinct wrongs" such that only those violations that fell within the statutory time period were actionable).

In sum, the holdings in *Bazemore, Morgan*, and *Brown Park* establish a consistent and coherent framework. As the D.C. Circuit stated, *Bazemore* and *Morgan* "dovetail: *Bazemore* holds that an employee may recover for discriminatorily low pay received within the limitations period because each paycheck constitutes a discrete discriminatory act, ... and *Morgan* ... [holds that] 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.' " *Shea*, 409 F.3d at 455 (internal citations omitted). The Federal Circuit applied the same reasoning as the latter decision in its analysis of the

continuing claim doctrine in *Brown Park*, holding that when a plaintiff's claim can be broken down into distinct and independent wrongs, *i.e.*, "discrete acts," the statute of limitations accrues separately for each instance "independent of the accrual of other wrongs." 127 F.3d at 1456–57.

In this instance, the application of the statute of limitations pertinent to Equal Pay Act claims is measured from the date Ms. Weber first filed her complaint in the district court, April 19, 2001. *See* 28 U.S.C. § 1631 ("the action ... shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."); *see also Stockton E. Water Dist. v. United States*, 62 Fed.Cl. 379, 389 (2004) (citing *Henke*, 60 F.3d at 800).[11] The government asserts that, assuming the facts as Ms. Weber alleges them are true, *see Goel*, 62 Fed.Cl. at 806, and thus that the NLRB's conduct was willful, Ms. Weber's claims are governed by the Equal Pay Act's three-year statute of limitations. Def.'s Mot. at 4 (citing 29 U.S.C. § 255(a)). From this predicate, the government argues that pursuant to the holdings in *Morgan*, this court lacks subject matter jurisdiction over the portions of Ms. Weber's claims that occurred prior to April 19, 1998.[12]

Ms. Weber responds that her claims of unequal pay are part of a "continuing violation." Pl.'s Opp. at 3–5. Specifically, Ms. Weber alleges that she may seek damages for those violations of the Equal Pay Act that occurred both during *and prior* to the statutory time period, because her claims did not

11. Ms. Weber's filing of a formal EEO administrative complaint on January 22, 1999, Compl. ¶ 1, does not toll the statute of limitations for her alleged violations of the EPA. *See Nerseth v. United States*, 17 Cl.Ct. 660, 664 (1989) (citing *Unexcelled Chem. Corp. v. United States*, 345 U.S. 59, 65–66, 73 S.Ct. 580, 97 L.Ed. 821 (1953)).

12. The government's motion for a partial dismissal, therefore, only pertains to Ms. Weber's first claim, which encompasses the period from April 21, 1995 to April 20, 1998, when Ms. Weber alleges she was not receiving equal pay for equal work while performing the duties of a Deputy Executive Secretary. *See supra*, at 718–19. There is no dispute that Ms. Weber's second

claim, encompassing the time from April 21, 1998 to September 20, 1998, is actionable because it falls within the EPA's three-year statutory time period with respect to willful violations.

In putting forward its arguments in support of its motion for partial dismissal, the government does not concede that the NLRB discriminated against Ms. Weber, let alone acted willfully. Def.'s Mot. at 2 n. 1; *see generally* Defendant's Answer. The government thus has reserved its right to seek to dismiss any portion of Ms. Weber's claims that may be barred by the EPA's two-year statute of limitations should she fail in her ultimate burden to prove that the NLRB acted willfully. *See* Hr'g Tr. 6:12–17; *see also Jenkins v. United States*, 46 Fed.Cl. 561, 562 n. 2 (2000).

begin to accrue until "'the date of the last occurrence of discrimination, rather than the first.'" *Id.* at 3 (quoting *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992)).

Ms. Weber cites two cases, *Miller* and *Anderson v. Zubieta*, 180 F.3d 329 (D.C.Cir. 1999), in support of her proposition that the portion of her claim that arose prior to April 19, 1998 is timely and thus not barred by the Equal Pay Act's statute of limitations. Pl.'s Opp. at 3–5.[13] Both decisions, however, were rendered prior to *Morgan*, and consequently their analyses did not take account of the Supreme Court's holding with respect to continuing claims. The courts of appeals that issued the decisions in *Miller* and *Anderson*, the Third and D.C. Circuits, have subsequently applied the reasoning of *Morgan*. *See O'Connor*, 440 F.3d at 128–29; *Shea*, 409 F.3d at 451 ("*Morgan* dooms any hope [the plaintiff] entertained that his current ... paychecks can resurrect his otherwise untimely challenges to the paychecks he received" outside the statutory time period). Moreover, the D.C. Circuit discussed *Anderson* in *Shea*, but relied only on the portion of *Anderson* that held timely the plaintiffs' claims that alleged present violations that fell *within* the statutory time period, *Shea*, 409 F.3d at 453, and implicitly rejected *Anderson's* additional holding that the plaintiffs could also recover for discriminatory paychecks issued prior to the statutory time period. *Id.* at 453 n. 4.[14]

Nonetheless, Ms. Weber contends that the rule in *Morgan* should not apply to her claim. Instead, Ms. Weber argues that her claim should fall under the *Morgan* exception because her claim is not comprised of discrete acts, but rather is analogous to a claim of hostile work environment and "based on the cumulative effect of individual acts." *Mor-*

*gan*, 536 U.S. at 115, 122 S.Ct. 2061; *see* Hr'g Tr. 26:17 to 27:4; Pl.'s Opp. at 4 n. 3. From these premises, she asserts that her claim should "not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122, 122 S.Ct. 2061. This argument is without merit.

A claim of disparate pay involves discrete pay periods and cannot be deemed analogous to the hostile work environment claim excepted in *Morgan*. The Supreme Court in *Morgan* used the issuance of discriminatory paychecks in *Bazemore* as an example of discrete discriminatory acts. *Morgan*, 536 U.S. at 111–12, 122 S.Ct. 2061. By contrast, the Supreme Court denoted that a hostile work environment claim is unitary, in part because "a single act of harassment may not be actionable on its own." *Id.* at 115, 122 S.Ct. 2061. By contrast, *each and every* paycheck that Ms. Weber received during the periods encompassed by her claims was allegedly lower than it otherwise should have been because of gender discrimination, and Ms. Weber has a resulting chain of claims derived from each pay period. *See* 29 U.S.C. § 206(d)(1) ("No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex"); *supra*, at 722–24 (noting that the Second, Seventh, Eighth, Eleventh, and D.C. Circuits have each held that a discriminatory paycheck is a discrete act under either Title VII or the EPA). Consequently, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061. Under the continuing claim doctrine, Ms. Weber's claims of discriminatory pay are "inherently

---

**13.** In *Miller,* the plaintiff argued, among other claims, that under the Equal Pay Act she received unequal pay for equal work with respect to her male counterparts. 977 F.2d at 841. The Third Circuit held that the statute of limitations on the entire claim should run from the date of the last occurrence of discriminatory pay. *Id.* at 843–44. In *Anderson,* the plaintiffs asserted claims under Title VII on the ground that they received substantially less in pay and benefits due to racial discrimination. 180 F.3d at 332.

The D.C. Circuit concluded that the plaintiffs could seek damages for discriminatory acts that occurred not only within, but also prior to, the statutory period. *Id.* at 337.

**14.** In *Shea,* the D.C. Circuit prefaced its reference to the second holding in *Anderson* by indicating that *Anderson* was "decided three years before the *Morgan* decision." 409 F.3d at 453 n. 4.

susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park*, 127 F.3d at 1456. If Ms. Weber successfully establishes liability in this case, the court would have to look at *each* paycheck in assessing damages.

Based on the Supreme Court's decisions in *Bazemore* and *Morgan*, and the law of this circuit as represented by *Brown Park*, each instance of discriminatory pay, as alleged by Ms. Weber, is a discrete act and therefore embodies a separate cause of action for purposes of the statute of limitations. Accordingly, the court holds that it is barred by the statute of limitations from entertaining that portion of Ms. Weber's first claim under the Equal Pay Act that arises prior to April 19, 1998. *See* 29 U.S.C. § 255(a).[15]

## CONCLUSION

For the reasons set forth above, the government's motion for partial dismissal is GRANTED. All claims arising prior to April 19, 1998, are precluded by the statute of limitations.[16]

In accord with Rule 16(b) of the Rules of the Court of Federal Claims and Appendix A, ¶¶ 4–5 of those Rules, on or before August 10, 2006, the parties shall file a further Joint Preliminary Status Report proposing a schedule for further proceedings.

IT IS SO ORDERED.

---

**15.** Despite the court's determination that Ms. Weber's pre-April 19, 1998 claims are barred, Ms. Weber may use prior acts that fall outside the Equal Pay Act's statutory time period as background evidence in support of those claims that are timely. *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061.

**16.** Ms. Weber's Motion to Withdraw Motion to Amend Complaint is also GRANTED.